Boon *v.* Juliet.

## Bennington Boon, appellant *v.* Juliet, a woman of color, appellee.

*Appeal from Jackson.*

A proviso in a statute is intended to qualify what is affirmed in the body of the act, section, or paragraph preceding it. The proviso of § 3, Article 6, of the Constitution of the State of Illinois, does not render the persons therein named, subject to servitude.

The children of negroes and mulattoes registered under the laws of the Territories of Indiana and Illinois, are unquestionably free.

Where judgment is rendered for the plaintiff on demurrer to the defendant's plea, the plaintiff may have an inquest to ascertain the damages, or he may waive this and take judgment for nominal damages.

This cause was heard in the Court below, at the May term, 1835, before the Hon. Alexander F. Grant.

J. Shields, for the appellant.

H. Eddy and D. J. Baker, for the appellee.

Smith, Justice, delivered the opinion of the Court:

This was an action of *trespass vi et armis* brought by the appellee against the appellant, for an assault and battery on her sons, Peter, Harrison, and Enoch, being her servants, and restraining them of their liberty, *per quod servitium amisit.*

The defendant in the Circuit Court, Boon, pleaded specially, that one Gaston removed into this State, while it was a part of the Territory of Indiana, and brought with him Juliet, being the owner of her, then aged about nine years; and did on the 20th of July, 1808, register her name and age with Robert Morrison, clerk of the Court of Common Pleas of Randolph county, in said Territory, agreeably to the law of the Territory, entitled " *An act for the introduction of Negroes and Mulattoes into the said Territory,*" passed Sept. 17th, 1807; That the said Gaston on the 13th of July, 1819, transferred the said Juliet, according to the laws of the Territory, to one Alexander Gaston, Jr., by bill of sale;—That on the 7th of October, 1819, Alexander Gaston, Jr., transferred her in like manner to one W. Boon, defendant's intestate. That said Peter, Harrison, and Enoch, are Juliet's children. That Enoch is 12 years and five months of age, born since the adoption of the Constitution, Peter 22, and Harrison 20 years of age; the two latter born before the adoption of the Constitution. The defendant, as Wm. Boon's administrator, entered plaintiff's close, and took said children, and detained them as part of his goods and chattels, which are the supposed trespasses, force, and injury in the plaintiff's declaration mentioned. To this plea the plaintiff demurred, and the defendant joined. The Circuit Court gave judgment on the demurrer

Boon *v.* Juliet.

for the plaintiff, and one cent in damages.   The judgment on the demurrer is assigned in this Court for error.

This action was confessedly instituted to ascertain the right of the children named in the declaration, to freedom.   We apprehend that the correctness of the decision of the Circuit Court is to be tested by the solution of the proposition, whether the children of registered mulatto or negro servants, recognised by the laws of the Territories of Indiana and Illinois, or either of them, while such Territories were in being; and the 3d section of the 6th Article of the Constitution of this State, can be, by virtue of those laws, and that section of the Constitution, held for any period of time whatever, in servitude.   In order to arrive at this solution, it is necessary to ascertain what were the character and extent of the legislation of the Territories of Indiana and Illinois on this subject.   It appears that while this portion of the country formed a component part of the then Territory of Indiana, on the 17th of Sept., 1807, the legislature of the Territory, adopted a law entitled " *An act concerning the introduction of Mulattoes and Negroes into this Territory.*"   By the first section of this act, it authorized the " Owner of any negroes or mulattoes, of and above the age of fifteen years, and owing service and labor as slaves in any of the States or Territories of the United States, to bring the said negroes or mulattoes into this Territory."   The second section of this act provided that the slave might agree with the owner, before the clerk of the Court of Common Pleas of the county in which the parties were, for the number of years which the slave would serve his owner, and the clerk was required to make a record of such agreement.

The third section provided for the removal of the slave in case of refusal to serve, at any time within sixty days thereafter.   The fifth section declares, that any person removing into this Territory, and being the owner or possessor of any negro or mulatto as aforesaid, under the age of fifteen years, or if any person shall hereafter acquire a property in any negro or mulatto under the age aforesaid, and who shall bring them into this Territory, it shall and may be lawful for such person, owner or possessor, to hold the said negro or mulatto to service or labor, the males until they arrive at the age of thirty-five, and females until they arrive at the age of thirty-two years.   The 6th section provides that any person removing any negro or mulatto into this Territory, under the authority of the preceding sections, it shall be incumbent on such person, within thirty days thereafter, to register the name and age of such negro or mulatto, with the clerk of the Court of Common Pleas for the proper county.   By the 13th section of the same act, it was further provided that the children, born in said Territory, of a parent of color, owing service or labor by *indenture* according to law, should serve the master

or mistress of such parent, the males until the age of thirty, and the females until the age of twenty-eight years. So far as relates to the question of the servitude of the children of negroes or mulattoes introduced under the Territorial laws, into either of the Territories named, it is understood that there was no further legislation by the Territory. The Constitution of this State contains in the 3d section of the 6th Article, the following: " Each and every person who has been bound to service by contract or indenture, in virtue of the laws of the Illinois Territory, heretofore existing, and in conformity to the provisions of the same, without fraud or collusion, shall he held to a specific performance of their contracts or indentures, and such negroes or mulattoes as shall have been registered in conformity with the aforesaid laws, shall serve out the time appointed by said laws. *Provided, however*, that the children hereafter born of such persons, negroes, or mulattoes, shall become free, the males at the age of twenty-one years, the females at the age of eighteen years. Each and every child born of indentured parents, shall be entered with the clerk of the county in which they reside, by their owners, within six months after the birth of said child."

From an examination of the several provisions of the laws of the Territories referred to, it will be seen that no provision was made affecting the liberty of the children of registered negroes or mulattoes, and it is manifest that the Territorial governments did not adopt any act to restrict or impair their natural right of freedom. The question of the validity of those acts, and their direct repugnance to the provisions of the Ordinance of 1787, has been fully and attentively examined in the case of Phœbe, a woman of color v. Jay,(1) in this Court, at its December term, 1828, and the effect of the constitutional provision in relation to the class of indentured servants referred to in that provision. That case settled the law in favor of the rights of the master under indentures made in conformity to the terms of that Article of the Constitution, and although it might be supposed to have left us little doubt in reference to the children of indentured servants, and their liability to serve out the time prescribed by the Territorial law, still it seems to my mind equally clear, that the provision of the 3d section of the 6th Article of the Constitution, could in no way alter, abridge, or change the condition of the children of registered servants. The Territorial laws had not in any way abridged their liberty, or rendered them liable to the performance of service to the owners of their parents; and it is in my judgment absurd and unjust to deduce such consequences from the proviso contained in that section of the 6th Article of the Constitution above quoted. It is true that the words used in the proviso, " That the children hereafter born of such persons,

(1) Breese 207.

negroes or mulattoes, shall become free; the males at the age of 21 years, and the females at the age of 18 years,"—may be considered as referring to the registered negroes and mulattoes named in the antecedent sentence of the paragraph; but when it is remembered that a proviso is intended to qualify what is affirmed in the body of an act, section, or paragraph preceding it, we discover that it was intended by the framers of the Constitution as a limitation on a supposed pre-existing right of the master to the service of the children of registered servants for a greater period of time, and designed as an exception in favor of such children, founded it is true, on the mistaken supposition that, under the Territorial laws, they had been subjected to a greater period of service; and not as creating the liability to service, and rendering a class of persons evidently free at their birth, the subjects of a laborious and extended period of servitude. It is most manifest that this proviso was framed under such a view, and intended as a mere limitation on the imagined right of the master to the service of the children. As no such right existed at the formation and adoption of the Constitution, and as the proviso must be considered as an act intended for the benefit of, and enlarging the rights of a class of persons supposed to have been subjected to a period of servitude, when in truth and in fact, none such could be legally considered to exist, I am clearly of opinion, that the children of registered negroes and mulattoes, under the laws of the Territories of Indiana and Illinois, are unquestionably free, and that the defendant's plea was insufficient to bar the plaintiff's action. It is also to be remarked that Peter and Harrison, two of the children, were born before the adoption of the Constitution, and are necessarily excluded from the terms of the 8th section of the 6th Article; and it is not pretended that any law of the Territory rendered them in any manner, whatever, liable to serve the owner of their mother. The demurrer to such plea was rightly sustained.

An objection is raised to the judgment for nominal damages.

The plaintiff might have had an inquest to ascertain the damages; but we have no doubt he might waive this, and take judgment for nominal damages.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*

*Note.*—See Phoebe *v.* Jay, Breese 207; Nance *v.* Howard, *Idem.* 183; R. L. 457–466; Gale's Stat. 501–508.

As to assessment of damages, see Clemson *et al. v.* The State Bank of Illinois, *Ante* 45; Vanlandingham *v.* Fellows *et al., Ante* 233.